IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE WASHINGTON POST<br>1150 15th Street, N.W.<br>Washington, DC 20071-7403,<br><br>        Plaintiff,<br><br>vs.<br><br>TRANSPORTATION SECURITY<br>ADMINISTRATION<br>601 South 12th Street<br>Arlington, VA 22202-4220, and<br><br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY<br>Washington, DC 20528,<br><br>        Defendants. | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Introduction

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, as amended, to compel the production of certain records maintained by the Transportation Security Administration ("TSA"), an agency within the U.S. Department of Homeland Security.

2. The TSA is responsible for the safety of the nation's transportation systems, including its airports. Many of the central functions of the TSA have been undertaken with the substantial assistance of private contractors who have entered into a series of multimillion dollar contracts with the TSA. For example, the TSA has turned to contractors to hire and train thousands of federal employees to screen airline passengers, to develop and implement the

agency's information technology systems and to create specific technologies that would identify certain airline passengers as likely security risks. The TSA has also used contractors to install machines that would detect explosives in airline passenger baggage.

3. The *Washington Post*, as well as federal regulators, have investigated concerns that, through the agency's reliance on contractors, the TSA has spent large amounts of federal funds on projects of questionable utility and has paid excessive fees to private companies for certain work. *See, e.g.*, Scott Higham & Robert O'Harrow Jr., *Contracting Rush For Security Led To Waste, Abuse*, WASH. POST, May 22, 2005, at A1 (reporting findings of federal audit that cost of TSA contract for installation of airport bomb detection machines doubled from $508 million to $1.2 billion in eighteen months and included $44 million in payments to contractor for good performance made without an evaluation of that performance); Sara Kehaulani Goo, *Probe Finds Overspending For TSA Center; Unethical, Perhaps Illegal, Inspector General Reports*, WASH. POST, April 20, 2005, at A2 (reporting findings of federal audit that "waste and abuse" occurred in project to build TSA operations center and noting that much of the contract work was steered by an agency manger to a company with little experience whom that manager later joined).

4. Beginning in March 2005, the *Washington Post* filed five FOIA requests with the TSA seeking copies of records related to certain contracts that the agency entered into with private contractors, as well as records related to internal government audits of the performance of those contracts. To date, the TSA has released only a single contract in response to the *Washington Post's* FOIA requests, although almost five months have now elapsed since its initial requests. Otherwise, the TSA has failed to substantively respond to the newspaper's requests for materials, despite properly presented requests and administrative appeals. While the TSA has

2

not told the *Washington Post* when it will release some or all of the documents requested, the agency was able to quickly refuse to expedite the newspaper's FOIA requests. The TSA has also declined to waive duplication costs associated with certain of the newspaper's requests although the *Washington Post* is legally entitled to waiver of those fees.

5.　　Significantly, with respect to one of the documents requested, an audit of a contract that the TSA entered into with a major contractor, the *Washington Post* independently obtained access to the audit document's contents despite the agency's unwillingness to publicly disclose it. As the newspaper reported, that particular audit concluded that the TSA may have significantly overpaid contractors for goods and services. *See* Scott Higham & Robert O'Harrow Jr., *The High Cost Of A Rush To Security; TSA Lost Control Over $300 Million Spent By Contractor To Hire Airport Screeners After 9/11*, WASH. POST, June 30, 2005, at A1; Robert O'Harrow Jr. & Scott Higham, *A Subcontractor's Short But Lucrative Existence*, WASH. POST, June 30, 2005, at A13. In the wake of these reports, the government confirmed that it had launched a fraud investigation related to the contract and members of Congress demanded that the TSA publicly release the audit in question. *See* Robert O'Harrow Jr. & Scott Higham, *TSA Airport Security Contract Examined For Fraud; Lawmakers Call For Further Investigations Into Costs Of Hiring Passenger Screeners After 9/11*, WASH. POST, July 1, 2005, at A7. As of this filing, however, the TSA has declined to comply with the *Washington Post's* FOIA request for this audit report and for various other records related to it. The agency has also denied the newspaper's request for a waiver of the duplication costs associated with the audit records on the basis that their disclosure would not significantly enhance the public understanding of how TSA implemented and oversaw the contract ostensibly because there has already been – at least according to the TSA – sufficient news coverage concerning this issue.

6. At bottom, as the *Washington Post's* prior reporting amply demonstrates, there is a very substantial public interest in the documents that the newspaper has requested and that reporting further underscores that these documents are plainly subject to disclosure under FOIA, whose primary purpose is to permit the public to learn information that sheds light on the operations of government.

### Jurisdiction and Venue

7. This Court has subject matter jurisdiction over this action and personal jurisdiction over defendants pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-706.

8. Venue is proper in this District pursuant to 5 U.S.C. § 552(a)(4)(B).

### Parties

9. Plaintiff WP Company LLC d/b/a The Washington Post (the "Post") publishes a newspaper with a daily circulation of approximately 750,000 and a Sunday circulation of more than one million. The Post's principal place of business is in the District of Columbia.

10. Defendant TSA is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1). Defendant U.S. Department of Homeland Security, as the parent agency of the TSA, is also a federal agency within the meaning of 5 U.S.C. § 552(f)(1).

### Facts

#### First Request

11. Via correspondence to the TSA dated March 1, 2005, the Post requested copies of records relating to a contract that the TSA entered into with Lockheed Martin for the development of technology that would identify and screen airline passengers who might pose a heightened security risk (the "First Request"). A true and correct copy of the First Request is

4

attached hereto as Exhibit A. Among other records, the First Request sought the Lockheed Martin contract with the TSA, written modifications thereto, copies of documents related to the award of the contract and its performance by Lockheed Martin, and copies of related correspondence and communications.

12. The maximum statutory period in which the TSA was required to render a decision on the First Request has expired. Notwithstanding the foregoing, the Post has not, as of this filing, received from the TSA a decision regarding the records sought pursuant to the First Request. Consequently, the First Request has been constructively denied.

13. Although under no obligation to do so, the Post administratively appealed the TSA's constructive denial of the First Request via correspondence dated May 17, 2005. A true and correct copy of the appeal is attached hereto as Exhibit B. The maximum statutory period in which the TSA was required to render a decision on the Post's administrative appeal has expired. Notwithstanding the foregoing, the Post has not, as of this filing, received from the TSA a decision regarding its appeal.

14. The Post has exhausted its administrative remedies with respect to the TSA's constructive denial of the First Request.

### Second Request

15. Via correspondence to the TSA dated March 1, 2005, the Post requested copies of records relating to a contract that the TSA entered into with Unisys for the development of an information technology infrastructure system for the agency (the "Second Request"). A true and correct copy of the Second Request is attached hereto as Exhibit C. Among other records, the Second Request sought the Unisys contract with the TSA, written modifications thereto, copies

of documents related to the award of the contract and its performance by Unisys, and copies of related correspondence and communications.

16. The maximum statutory period in which the TSA was required to render a decision on the Second Request has expired. Notwithstanding the foregoing, the Post has not, as of this filing, received from the TSA a decision regarding the records sought pursuant to the Second Request. Consequently, the Second Request has been constructively denied.

17. Although under no obligation to do so, the Post administratively appealed the TSA's constructive denial of the Second Request via correspondence dated May 17, 2005. *See* Exhibit B. The maximum statutory period in which the TSA was required to render a decision on the Post's administrative appeal has expired. Notwithstanding the foregoing, the Post has not, as of this filing, received from the TSA a decision regarding its appeal.

18. The Post has exhausted its administrative remedies with respect to the TSA's constructive denial of the Second Request.

### Third Request

19. Via correspondence to the TSA dated March 1, 2005, the Post requested copies of records relating to a contract that the TSA entered into with the Boeing Company to install explosive detection machines at the nation's airports to screen passenger baggage (the "Third Request"). A true and correct copy of the Third Request is attached hereto as Exhibit D. Among other records, the Third Request sought the Boeing contract with the TSA, written modifications thereto, copies of documents related to the award of the contract and its performance by Boeing, and copies of related correspondence and communications.

20. The maximum statutory period in which the TSA was required to render a decision on the Third Request has expired. Notwithstanding the foregoing, the Post has not, as

of this filing, received from the TSA a decision regarding the records sought pursuant to the Third Request. Consequently, the Third Request has been constructively denied.

21. Although under no obligation to do so, the Post administratively appealed the TSA's constructive denial of the Third Request via correspondence dated May 17, 2005. *See* Exhibit B.

22. In correspondence dated May 18, 2005, the TSA agreed to release to the Post a copy of the Boeing contract and certain modifications thereto. A true and correct copy of the TSA's correspondence is attached hereto as Exhibit E. As of this filing, the Post has received no other records from the TSA responsive to the Third Request nor has the TSA rendered a decision on the remaining records sought pursuant to the Third Request.

23. The maximum statutory period in which the TSA was required to render a decision on the Post's administrative appeal of the constructive denial of the remainder of the Third Request has expired. Notwithstanding the foregoing, the Post has not, as of this filing, received from the TSA a decision regarding its appeal.

24. The Post has exhausted its administrative remedies with respect to the TSA's constructive denial of the remainder of the Third Request.

25. The Post sought the waiver of duplication costs associated with the Third Request, *see* Exhibit D, which waiver the TSA denied on or about March 9, 2005. The Post administratively appealed the decision in correspondence dated April 27, 2005. A true and correct copy of the appeal is attached hereto as Exhibit F. At the request of the TSA, the Post provided supplemental information in support of its appeal in correspondence dated May 17, 2005. *See* Exhibit B. The decision to deny the waiver of duplication costs was affirmed on

appeal on June 27, 2005. A true and correct copy of the decision on appeal is attached hereto as Exhibit G.

26. The Post has exhausted its administrative remedies with respect to the TSA's denial of the waiver of duplication costs associated with the Third Request.

### Fourth Request

27. Via correspondence to the TSA dated March 1, 2005, the Post requested copies of records relating to contracts that the TSA entered into with certain companies, including NCS Pearson, for the hiring and deployment of thousands of federal employees to screen airplane passengers (the "Fourth Request"). A true and correct copy of the Fourth Request is attached hereto as Exhibit H. Among other records, the Fourth Request sought the NCS Pearson contract with the TSA, written modifications thereto, copies of documents related to the award of the contract and its performance by NCS Pearson, and copies of related correspondence and communications.

28. The maximum statutory period in which the TSA was required to render a decision on the Fourth Request has expired. Notwithstanding the foregoing, the Post has not, as of this filing, received from the TSA a decision regarding the records sought pursuant to the Fourth Request. Consequently, the Fourth Request has been constructively denied.

29. Although under no obligation to do so, the Post administratively appealed the TSA's constructive denial of the Fourth Request via correspondence dated May 17, 2005. *See* Exhibit B. The maximum statutory period in which the TSA was required to render a decision on the Post's administrative appeal has expired. Notwithstanding the foregoing, the Post has not, as of this filing, received from the TSA a decision regarding its appeal.

30. The Post has exhausted its administrative remedies with respect to the TSA's constructive denial of the Fourth Request.

31. The Post sought the waiver of duplication costs associated with the Fourth Request, *see* Exhibit H, which waiver the TSA denied on or about March 9, 2005. Via correspondence dated April 27, 2005, the Post administratively appealed the denial. *See* Exhibit F. At the request of the TSA, the Post provided supplemental information in support of its appeal in correspondence dated May 17, 2005. *See* Exhibit B. The decision to deny the waiver of duplication costs was affirmed on appeal on June 27, 2005. *See* Exhibit G.

32. The Post has exhausted its administrative remedies with respect to the TSA's denial of the waiver of duplication costs associated with the Fourth Request.

**Fifth Request**

33. Via correspondence to the TSA dated May 5, 2005, the Post requested copies of audit reports undertaken by the Defense Contract Audit Agency of the contracts entered into by the TSA with the Boeing Company and NCS Pearson (the "Fifth Request"). A true and correct copy of the Fifth Request is attached hereto as Exhibit I.

34. The maximum statutory period in which the TSA was required to render a decision on the Fifth Request has expired. Notwithstanding the foregoing, the Post has not, as of this filing, received from the TSA a decision regarding the records sought pursuant to the Fifth Request. Consequently, the Fifth Request has been constructively denied.

35. Although under no obligation to do so, the Post administratively appealed the TSA's constructive denial of the Fifth Request via correspondence dated June 8, 2005. A true and correct copy of the appeal is attached hereto as Exhibit J. The constructive denial of the

9

Fifth Request was affirmed on appeal on June 30, 2005. A true and correct copy of the decision on appeal is attached hereto as Exhibit K.

36. The Post has exhausted its administrative remedies with respect to the TSA's constructive denial of the Fifth Request.

37. The Post sought the waiver of duplication costs associated with the Fifth Request, *see* Exhibit I, which waiver the TSA denied on or about May 10, 2005. At the request of the TSA, the Post provided supplemental information in support of its waiver request in correspondence dated June 8, 2005. *See* Exhibit J. The decision to deny the waiver of duplication costs was affirmed on appeal on June 30, 2005. *See* Exhibit K.

38. The Post has exhausted its administrative remedies with respect to the TSA's denial of the waiver of duplication costs associated with the Fifth Request.

### First Cause of Action

### Failure to Disclose Records Sought

39. The Post repeats, realleges and incorporates the allegations contained in paragraphs 1 though 38 above as if fully set forth herein.

40. The Post has a statutory right to the records that it seeks by way of the First, Second, Third, Fourth and Fifth Requests, and there is no legal basis for the defendants' failure to disclose them.

41. The defendants' failure to disclose the records sought by way of the First, Second, Third, Fourth and Fifth Requests violates FOIA, 5 U.S.C. § 552(a)(3)(A) and § 552(a)(6)(A), and any applicable regulations promulgated thereunder.

### Second Cause of Action

### Denial of Waiver of Duplication Costs

10

42.     The Post repeats, realleges and incorporates the allegations contained in paragraphs 1 though 41 above as if fully set forth herein.

43.     The TSA has denied the waiver of duplication costs associated with the Third, Fourth and Fifth Requests because the agency contends that disclosure of the records sought pursuant to these FOIA requests would not significantly enhance public understanding of the operations of the TSA. The TSA reached this conclusion despite the fact that the *Washington Post's* reporting sparked public confirmation that the subject-matter of one of these requests is the subject of a government investigation of possible fraud. The TSA's conclusions are also inconsistent with its decision to grant the Post the waiver of duplication costs associated with the First and Second Requests because it concluded that prior press reports in those instances had not sufficiently informed the public regarding the records at issue in the First and Second requests.

44.     The Post has a statutory right to the waiver of duplication costs associated with the Third, Fourth and Fifth Requests, and there is no legal basis for the defendants' denial of such waiver.

45.     The defendants' denial of the waiver of duplication costs associated with the Third, Fourth and Fifth Requests violates FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and any applicable regulations promulgated thereunder.

**WHEREFORE**, plaintiff requests that this Court:

a. Declare that defendants' refusal to disclose the requested records violates FOIA;

b. Declare that plaintiff is statutorily entitled to waiver of duplication costs associated with its Third, Fourth and Fifth Requests;

c. Order defendants to make the requested records available to plaintiff;

d. Order defendants to grant waiver of duplication costs associated with the Third, Fourth, and Fifth Requests;

e. Expedite this action in every way pursuant to 28 U.S.C. § 1657(a);

f. Award plaintiff its costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 552(a)(4)(E); and

g. Grant such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Dated: July 28, 2005

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

By: _____
Nathan E. Siegel, Bar No. 446253
Thomas Curley, Bar No. 473798

1050 17th Street, N.W., Suite 800
Washington, DC 20036-5514
(202) 508-1100
Facsimile: (202) 861-9888

ATTORNEYS FOR PLAINTIFF

OF COUNSEL:

Eric N. Lieberman, Esq.
The Washington Post
1150 15th Street, N.W.
Washington, DC 20071
(202) 334-6017

12