# The Washington Post

1150 15TH STREET N. W.
WASHINGTON, D.C. 20071-7403
(202) 334-6000

April 27, 2005

**BY MESSENGER**

Mr. Douglas Callen
Director, Office of Security
Transportation Security Administration
West Tower, TSA-20
601 South 12th Street
Arlington, VA 22202-4220

Ms. Catrina Pavlik
Associate Director
U.S. Department of Homeland Security
Transportation Security Administration
Freedom of Information Act and Privacy Act Division
Arlington, VA 22202

  Re: **FEE WAIVER JUSTIFICATION/ADMINISTRATIVE APPEAL –
    FOIA Nos. TSA 05-0440, -0441, -0442, -0443**

Dear Mr. Cullen and Ms. Pavlik:

  I write to provide additional justification for fee waivers in the above-referenced FOIA requests. If the agency has already initially determined not to grant fee waivers, please treat this letter as an administrative appeal.

### Background

  I am a staff writer for The Washington Post. On March 5, 2005, I submitted four FOIA requests to the Transportation Security Administration ("TSA"), each one seeking records pertaining to a particular contract between TSA and an outside vendor. TSA assigned the following FOIA reference numbers to these requests:

- TSA 05-0440: For the Lockheed Martin contract for the computer-assisted passenger pre-screening system, also known as CAPPS II, and related records.
- TSA 05-0441: For the Unysis contract for a TSA technology infrastructure program, and related records.
- TSA 05-0442: For the Boeing contract to provide an explosive detection system to screen baggage at the nation's airports, and related records.

Mr. Douglas Callen
Ms. Catrina Pavlik
April 27, 2005
Page 2

- TSA 05-0443: For the NCS Pearson contract for hiring and deploying an airport passenger screener workforce, and related records.

Each of these requests contained a request for a fee waiver and a justification as to why it should be granted.

On or about March 9, TSA requested that I submit further justification in support of the fee waiver requests. Subsequently, Deborah Taylor of TSA told me that it would cost $5000 in duplication fees to obtain some of the requested records for the Boeing FOIA request alone. When counsel for The Post contacted TSA to discuss the fee waiver, Ms. Pavlik informed him that The Post needed to file an appeal of the fee waiver determination.

In the course of these communications, I was told that some of the requested records had already been produced to other requesters. On April 26, I agreed to pay duplication fees for those records. Specifically, as to TSA 05-0442, I agreed to pay for copies of the Boeing contract, as well as 109 of the 199 contract modifications. As to TSA 05-0441, I agreed to pay for a copy of the Unisys contract. As to TSA 05-0443, I agreed to pay for a copy of the NCS Pearson contract. I am therefore submitting this justification/administrative appeal in support of my request that TSA waive the duplication fees for all remaining documents responsive to the four requests.

## JUSTIFICATION FOR FEE WAIVER

In 1987, Congress amended FOIA to "ensure that it be liberally construed in favor of waivers for noncommercial requesters." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003)(internal quotation omitted). Agencies are therefore required to waive fees for requesters able to demonstrate that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

In the applicable regulations, the Department of Homeland Security ("DHS") breaks this statutory requirement into distinct elements. First, DHS requires the requester to demonstrate that "[d]isclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of government." 6 C.F.R. § 5.11(k)(1)(i). Second, DHS requires the requester to demonstrate that "disclosure of the information is not primarily in [its] commercial interest." 6 C.F.R. § 5.11(k)(1)(ii). My request for a fee waiver should be granted under the standards set forth in the agency's regulations and the cases interpreting the FOIA fee waiver provision.

Mr. Douglas Callen
Ms. Catrina Pavlik
April 27, 2005
Page 3

A. <u>The "Public Interest" Requirement</u>. Under the regulations, TSA considers four factors in determining whether the requester has demonstrated that disclosure of the information is in the "public interest." They are clearly present here.

<u>First</u>, the subject of the requested records concerns the "operations or activities of the government." Each request identifies with reasonable specificity an operation or activity of the government. For example, FOIA No. 05-0442 pertains to "the TSA contract with Boeing Co. for the installation and maintenance of the Explosives Detection Systems (EDS) program." It requests records relating to, among other things, TSA's pre-vendor conferences, pre-approval meetings, and post-bid conferences. It further requests records concerning performance evaluations and audits, as well as communications between TSA and various parties. In sum, all of the records pertain to specifically identified government functions. The other three FOIA requests referenced above are equally specific. Indeed, they contain a level of specificity that far exceeds what is required under the law. *See, e.g. Judicial Watch*, 326 F.3d at 1313.

<u>Second</u>, disclosure of the requested records is "likely to contribute" to an understanding of these government operations and activities. It is hard to imagine a set of records that would be more likely to contribute to the public's understanding of the identified TSA operations and activities. Moreover, to our knowledge, the records covered by the fee waiver (as narrowed) have not been released before, and thus would add new information to the public's understanding of these TSA contracts. *See Judicial Watch*, 326 F.3d at 1314.

<u>Third</u>, disclosure will contribute to the understanding of the public at large, as opposed to just my own understanding. In fact, the agency's regulations specifically provide that "[i]t shall be presumed that a representative of the news media will satisfy this consideration." There is no basis for the agency to overcome the presumption here. As a reporter, I made this request so that I can disseminate information to the public about these massive government contracts through my reporting for The Washington Post.

<u>Fourth</u>, disclosure of the requested records would contribute "significantly" to the public's understanding of the identified TSA operations or activities. Indeed, as noted above, it is difficult to conceive of records that would contribute more in terms of understanding how TSA went about awarding these multi-billion dollar contracts and evaluating the contractors' subsequent performance. Further, as noted above, these records have not been previously disclosed. Under these circumstances, the records would make a contribution to the public's understanding of these vital government functions to a "significant extent" – no matter what the disclosed portions reveal.

I am aware that TSA believes that the some of the requested records contain proprietary information, which it may decide to withhold, and it has asked me to explain

Mr. Douglas Callen
Ms. Catrina Pavlik
April 27, 2005
Page 4

why the disclosable portions of the requested records would be significant. I believe that much of the information I requested does not involve proprietary information and is therefore disclosable. The release of that non-proprietary information will significantly increase the public's understanding of these TSA contracts. For example, I requested all correspondence regarding these contracts. I also requested records relating to how the contracts were monitored by your agency. These documents include the basic contract file, the Contract Officer Technical Representative's file, the internal correspondence file, the technical direction and evaluation file, and the payment file.

As you are no doubt aware, the agency's regulations specifically caution components that significance is an objective standard and that components "shall not make value judgments about whether information that would contribute significantly to public understanding of the operations or activities of the government is "important" enough to be made public." 6 C.F.R. § 5.11(k).

B. The "Not Primarily in the Commercial Interest of the Requester" Requirement. The agency's regulations next require a requester to demonstrate that "[d]isclosure of the information is not primarily in the commercial interest of the requester." There is no question that, as a staff writer for The Washington Post, I am a "news media requester" under the agency's regulations. 6 C.F.R. § 5.11(b)(6). The agency's regulations further provide that "[c]omponents ordinarily shall presume that where a news media requester has satisfied the public interest standard, the public interest will be the interest primarily served by disclosure to the requester." Where, as here, I have clearly established the "public interest" in disclosure, there is no basis for overcoming the presumption that the public interest is the one primarily served by disclosure.

For these reasons, I believe that disclosure is in the public interest and that a fee waiver should be granted. Please feel free to call me if you have any questions or concerns regarding any of the above or if you require additional information.

I look forward to hearing from you as soon as possible, and request again that you communicate with me by telephone, fax, or e-mail, rather than regular mail.

Sincerely,

Scott Higham
Washington Post Staff Writer
202-334-7947
highams@washpost.com