# The Washington Post

1150 15th STREET N. W.
WASHINGTON, D.C. 20071-7403
(202) 334-6000

June 8, 2005

**BY MESSENGER**

Mr. Douglas Callen
Director, Office of Security

Ms. Catrina Pavlik
Associate Director, FOIA/PA Division

Transportation Security Administration
TSA Headquarters, TSA-20
11th Floor, 210S, West Tower
601 South 12th Street
Arlington, VA 22202-4220

Re:    **ADMINISTRATIVE APPEAL –**
       **FOIA No. TSA 05-0611**

Dear Mr. Cullen and Ms. Pavlik:

I hereby appeal from TSA's denial of the above-referenced FOIA request and the request therein for expedited processing. I also write to provide the requested supplemental justification for a fee waiver.

## Background

I am a staff writer for The Washington Post. On May 5, 2005, I submitted a FOIA request to the Transportation Security Administration ("TSA") seeking "copies of DCAA audit reports" of federal contracts TSA entered into with Boeing Co. and NCS Pearson, Inc., both of which relate to airport security. In the request, I asked for expedited processing and made the following certification in support:

> We are also requesting that you grant this request under expedited processing. As journalists, we are primarily engaged in disseminating information. The public has an urgent need for information about homeland security programs because they affect the security of the nation and the expenditures to support these programs are funded by billions in taxpayer funds. In addition, widespread news coverage of homeland security programs, including this program, along with findings by government auditors and inspectors general, have raised questions

Mr. Douglas Callen & Ms. Catrina Pavlik
June 8, 2005
Page 2

about whether the public's money is being properly spent by contractors and adequately monitored by federal officials. The public has an overriding interest in knowing whether its money is being properly spent in the name of protecting them from future terrorist attacks, and delaying the response would compromise that interest by depriving the public of timely information about these critical and expensive programs. We certify that these statements concerning the need for expedited processing are true and correct to the best of our knowledge and belief.

I also requested a fee waiver and stated the reasons why I thought it should be granted.

On May 10, TSA acknowledged receiving the request, which was assigned the above-referenced identification number. In a separate letter dated May 10, TSA denied my request for expedited processing on the ground that I "failed to demonstrate adequately the 'compelling need.'" TSA also requested that I submit further justification in support of my fee waiver request.

## I.    TSA'S CONSTRUCTIVE DENIAL

TSA has not responded to the above-referenced request within the statutory deadline. TSA acknowledged receiving the request on May 9. TSA was required to respond by June 6. The deadline has passed with no response from TSA. TSA's failure to respond constitutes a constructive denial of the request, and I now appeal from the denial.

## II.    REASONS WHY TSA SHOULD HAVE GRANTED MY REQUEST FOR EXPEDITED PROCESSING

Under TSA's implementing regulations, a FOIA request receives "expedited treatment" when it is determined that it involves "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." 6 C.F.R. § 5.5(d)(1). The regulations further provide that media requesters "must establish a particular urgency to inform the public about the government activity involved in the request, beyond the public's right to know about government activity generally." 6 C.F.R. § 5.5(d)(3). I believe that the FOIA request deserves expedited treatment under this standard.

First, there is no question that as a Washington Post reporter I am "primarily engaged in disseminating information."

Second, there is no question that the requests seek information concerning an "actual or alleged federal government activity" – two major TSA contracts for important airport security measures.

Mr. Douglas Callen & Ms. Catrina Pavlik
June 8, 2005
Page 3

Third, there is an "urgency to inform the public" about these TSA homeland security contracts beyond the public's general right to know about them. The D.C. Circuit has explained that "in determining whether requesters have demonstrated 'urgency to inform,' . . . courts must consider at least three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns a federal government activity. *See Al-Fayed v. CIA*, 254 F.3d 300, 311 (D.C. Cir. 2001).

An urgency to inform the public about these critical TSA homeland security contracts clearly exists. TSA's homeland security contracts are matters of current exigency to the American public. The security of the nation's transportation systems from terrorist attacks is one of the most critical issues facing the nation. The request seeks DCAA audit reports of two TSA contracts designed to protect airports and commercial passenger aircraft from attack. Other government auditors, inspectors general, and news stories have raised questions about whether these multibillion dollar contracts are being adequately monitored by federal officials, and whether taxpayer dollars are being appropriately spent. For example, the DHS IG's office recently released a report, titled "Follow-up Audit of Passenger and Baggage Screening Procedures at Domestic Airports," showing that passenger screening efforts had not improved in the previous year and continued to experience severe problems detecting weapons and contraband at security check points. This comes after the agency spent hundreds of millions of dollars to train and deploy a new, ostensibly more efficient passenger screening workforce. The IG report found that these problems will not likely improve without new technology measures at airports, which will result in additional contracts being awarded by the agency and requiring the expenditure of millions and potentially billions more of the public's money.

By delaying the response to this request for DCAA audit reports, the public will have to wait too long to find out whether TSA is spending billions of its tax dollars in an appropriate manner to protect us from attack. Furthermore, TSA continues to spend and seek money for homeland security programs. Congress is considering whether to fund these programs, and the public has a pressing right to know how they have been managed and fulfilled in the past and whether the pattern of past performance is likely to continue. "[W]hen considered together, the host of factors . . . are more than sufficient to satisfy the requirements." *ACLU, et al. v. Dep't of Justice, et al.*, 321 F. Supp.2d 24, 31 (D.D.C. 2004)(making clear that, under virtually identical standard for expedited processing contained in Department of Justice regulations, the court must consider the totality of the circumstances rather than isolated elements of the urgency to inform standard).

In sum, I believe the law is clear that TSA should have granted my request for expedited processing.

Mr. Douglas Callen & Ms. Catrina Pavlik
June 8, 2005
Page 4

## III.    ADDITIONAL JUSTIFICATION FOR FEE WAIVER

In 1987, Congress amended FOIA to "ensure that it be liberally construed in favor of waivers for noncommercial requesters." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003)(internal quotation omitted). Agencies are therefore required to waive fees for requesters able to demonstrate that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

In the applicable regulations, the Department of Homeland Security ("DHS") breaks this statutory requirement into distinct elements. First, DHS requires the requester to demonstrate that "[d]isclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of government." 6 C.F.R. § 5.11(k)(1)(i). Second, DHS requires the requester to demonstrate that "disclosure of the information is not primarily in [its] commercial interest." 6 C.F.R. § 5.11(k)(1)(ii). My request for a fee waiver should be granted under the standards set forth in the agency's regulations and the cases interpreting the FOIA fee waiver provision.

A. The "Public Interest" Requirement.  Under the regulations, TSA considers four factors in determining whether the requester has demonstrated that disclosure of the information is in the "public interest." They are clearly present here.

First, the DCAA audit reports concern "operations or activities of the government" – in this case, two major TSA homeland security contracts.

Second, disclosure of the DCAA audit reports is "likely to contribute" to an understanding of TSA operations and activities. To our knowledge, the DCAA audit reports have not been released before, and thus would add new information to the public's understanding of these TSA contracts. *See Judicial Watch*, 326 F.3d at 1314. Moreover, TSA cannot seriously questions whether audit reports are at least "likely to contribute" to the public's understanding of the TSA contracts with Boeing and NCS Pearson.

Third, disclosure will contribute to the understanding of the public at large, as opposed to just my own understanding. In fact, the agency's regulations specifically provide that "[i]t shall be presumed that a representative of the news media will satisfy this consideration." There is no basis for the agency to overcome the presumption here. As a reporter, I made this request so that I can disseminate information to the public about these TSA contracts through my reporting for The Washington Post.

Fourth, disclosure of the DCAA audits would contribute "significantly" to the public's understanding of TSA's contracts with Boeing and NCS Pearson – no matter

EXHIBIT J

Mr. Douglas Callen & Ms. Catrina Pavlik
June 8, 2005
Page 5

what the auditors found. As you are no doubt aware, the agency's regulations specifically caution components that significance is an objective standard and that components "shall not make value judgments about whether information that would contribute significantly to public understanding of the operations or activities of the government is "important" enough to be made public." 6 C.F.R. § 5.11(k).

   B. The "Not Primarily in the Commercial Interest of the Requester" Requirement. The agency's regulations next require a requester to demonstrate that "[d]isclosure of the information is not primarily in the commercial interest of the requester." There is no question that, as a staff writer for The Washington Post, I am a "news media requester" under the agency's regulations. 6 C.F.R. § 5.11(b)(6). The agency's regulations further provide that "[c]omponents ordinarily shall presume that where a news media requester has satisfied the public interest standard, the public interest will be the interest primarily served by disclosure to the requester." Where, as here, I have clearly established the "public interest" in disclosure, there is no basis for overcoming the presumption that the public interest is the one primarily served by disclosure.

   For all of these reasons, I believe that disclosure is in the public interest and that a fee waiver should be granted.

   Please feel free to call me if you have any questions or concerns regarding any of the above or if you require additional information. Otherwise, I will expect a response to this appeal in no later than 20 working days.

Sincerely,

Robert O'Harrow
Washington Post Staff Writer
202-334-6068
o'harrowr@washpost.com