U.S. Department of Homeland Security

Office of Security
601 South 12th Street
Arlington, VA 22202



Transportation
Security
Administration

JUN 30 2005

Mr. Robert O'Harrow
Staff Writer
The Washington Post
1150 15th Street, N.W.
Washington, DC 20071-7403

Re: FOIA Case Number:   TSA05-0611 (Constructive Denial, Fee Waiver & Expedited Treatment)

Dear Mr. O'Harrow:

This is in response to your correspondence relating to the referenced request for information under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. On May 5, 2005, you submitted a FOIA request to TSA for "copies of DCAA audit reports" of federal contracts TSA entered into with Boeing Co. and NCS Pearson Inc.[1] In your request, you asked for both expedited processing and for a waiver of all fees. By letter dated May 10, 2005, TSA denied both expedited processing and fee waiver. You have appealed TSA's failure to provide a response within the statutory deadline, and TSA's decision to deny both a waiver of all fees and expedited processing of your request.

Constructive Denial

Once an agency properly receives a FOIA request, it has twenty working days in which to make a determination on the request.[2] However, due to reasons beyond our control, including unpredicted resource limitations, TSA has adopted the court-sanctioned practice of generally handling backlogged FOIA requests on a "first-in, first-out" basis.[3] TSA has promulgated regulations[4] providing for "multitrack processing" of FOIA requests -- which allows TSA to process requests on a first-in, first-out basis within each track, but also permits TSA to respond to relatively simple requests more quickly than requests involving complex and/or voluminous records. As you are no doubt aware, your request involves numerous records requiring extensive processing and business information submitter review.

---

[1] The Boeing contract provides for an explosive detection system to screen baggage at the nation's airports; the NCS Pearson contract provides for hiring and deploying an airport passenger screener workforce.
[2] 5 U.S.C. § 552(a)(6)(A)(i).
[3] See Open Am. v. Watergate Special Prosecution Force, 547 F.2d 605, 614-16 (D.C. Cir. 1976) (citing 5 U.S.C. § 552(a)(6)(C)).
[4] 6 CFR § 5.5(b) (2005).

TSA05-0611 seeks records that have not been previously processed and requires business information submitter notices to be sent out to each vendor for their input as to confidential and/or proprietary content. Once we receive the vendors' comments, we will process these documents accordingly. For that reason, your appeal from TSA's "failure to respond" is denied.

Fee Waiver

In your letter dated May 5, 2005, you requested a large number of records under the FOIA related to audits of two separate contracts administered by TSA. You also requested that TSA "waive all fees in the public interest because the information will contribute to public understanding of the operations or activities of the government and is not primarily in [your] commercial interest." Paraphrasing the standard for a fee waiver does not constitute a sufficient basis for granting the waiver. In your appeal, you sought to provide additional justification for your fee waiver requests.

The FOIA provides for news media FOIA requesters to be assessed duplication fees for responsive documents. The FOIA also authorizes agencies to reduce or waive fees, in whole or in part, when it is determined that such action is in the public interest because furnishing the information is (1) likely to contribute significantly to public understanding of the operations or activities of the government, and (2) is not primarily in the commercial interest of the requester. Such fee waivers are not automatic and must be justified by the requester. The Department of Homeland Security (DHS) regulations[5] list four factors to be used when determining whether disclosure is likely to contribute significantly to public understanding of the operations or activities of the government. I shall address these factors individually.

1. The subject of the request.

   The subject of the requested records must concern identifiable operations or activities of the federal government, with a connection that is direct and clear, not remote or attenuated. You argue that the request satisfies this prong in that it concerns "two major TSA homeland security contracts." I find that your request satisfies this prong of the analysis.

2. The informative value of the information to be disclosed.

   The disclosable portions of the requested records must be meaningfully informative about government operations or activities. The disclosure of information already in the public domain would not be as likely to contribute to such understanding. With respect to this prong, you argue merely that "TSA cannot seriously questions [sic] whether audit reports are at least 'likely to contribute' to the public's understanding of the TSA contracts...," and that you believe the records have not previously been released and would thus add new information to the public's understanding. Your justification, relying on the purported self-evident nature of the records, is insufficient. In addition, as discussed in greater detail below, a simple search of the internet reveals that information on these contracts has already been the subject of much public information dissemination, including by your own newspaper. I conclude that your request fails to satisfy this prong.

---

[5] 6 CFR § 5.11(k)(2) (2005).

www.tsa.gov

3. Whether disclosure to this requester will contribute to public understanding.

> The disclosure must contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons. DHS regulations presume that a representative of the news media will normally satisfy this consideration. Accordingly, I find that your requests satisfy this prong of the analysis.

4. Public understanding must be significantly enhanced by disclosure.

> To warrant a waiver or reduction of fees, the public's understanding of the subject matter in question, as compared to the level of public understanding existing prior to the disclosure, must be likely to be significantly enhanced by the disclosure. Disclosure of information that already is in the public domain, in either a duplicative or a substantially identical form, would not significantly contribute to such understanding because nothing new would be added to the public's understanding. *See Sierra Club Legal Def. Fund*, No. 93-35383, *slip op.* at 4 (9th Cir. Aug. 29, 1994) (disclosure would not "add anything to 'public understanding' in light of vast amount of material already disseminated and published"); *Sloman v. United States Dep't of Justice*, 832 F. Supp. 63, 68 (S.D.N.Y. 1993) (information previously released to other writers will not contribute significantly to public understanding of operations of government). A simple search for news articles reporting on and analyzing TSA's implementation and oversight of the audited contracts revealed the following:

> <u>Boeing contract to provide an explosive detection system to screen baggage at the nation's airports</u>

>> There is a tremendous number of news articles related to the Boeing EDS contract, TSA oversight, and procurement issues. Many articles discuss and analyze the September 2004 DHS Inspector General audit of TSA's implementation and oversight of the contract. *See, e.g.*, Renae Merle, *TSA Deal Overpaid Boeing, Report Says*, WASHINGTON POST, Oct. 19, 2004, at E01; Scott Higham and Robert O'Harrow, Jr., *Boeing Profits Excessive, Audit of TSA Claims*, WASHINGTON POST, May 22, 2005, at A01 (extensively discussing Boeing's response to audit). The audit, plus the ongoing nationwide news articles analyzing the audit, discuss in depth what the contract provides, the vendor's performance, and especially how the vendor was paid. Based upon these results, I have determined that disclosure of the DCAA audit of the contract, while potentially informative, would not significantly enhance the public understanding of how TSA implemented and oversaw the contract.

> <u>NCS Pearson contract for hiring and deploying an airport passenger screener workforce</u>

>> Similar to the Boeing contract, articles and commentary concerning TSA's contract to hire and deploy a federal screener force are voluminous. Many articles discuss the award, the cost overages, and the recently-completed Defense Contract Audit Agency

audit of the contract. Specifically, the Washington Post wrote an extensive article[6] educating the public on the screener hiring process and the "pitfalls of rushed government contracting." Based upon these results, I have determined that disclosure of the DCAA audit of the contract would not significantly enhance the public understanding of how TSA implemented and oversaw the contract.

I therefore affirm the denial of your request for a fee waiver for TSA05-0611.

Expedited Treatment

I also write to respond to your appeal of TSA's decision to deny expedited processing of the above-referenced Freedom of Information Act request. You asked that TSA expedite processing because (1) you are journalists primarily engaged in disseminating information; (2) the public has an urgent need for information about these homeland security contracts; and (3) widespread coverage of homeland security programs, along with findings of government auditors, have raised questions about spending.

The FOIA requires agencies to promulgate regulations providing for the expedited processing of requests if the requester demonstrates a "compelling need."[7] A requester primarily engaged in disseminating information bears the burden of showing "compelling need" by demonstrating that an "urgency to inform the public concerning actual or alleged Federal Government activity" exists.[8] An "urgency to inform" would be found to exist for these requests if (1) the request concerns a "matter of current exigency to the American public," and (2) the consequences of delaying the response would "compromise a significant recognized interest."[9] I note that the courts have held that these categories are to be "narrowly applied"[10] so that other requesters would not be unduly disadvantaged.

You argue that the requests are a matter of current exigency in that the records specifically concern "audit reports of two TSA contracts designed to protect airports and commercial aircraft from attack," and that recent news stories and government reports "have raised questions about [adequate government monitoring] and whether taxpayer dollars are being appropriately spent." While the news articles demonstrate that the subjects of the government reports are newsworthy, you have presented no evidence that a pressing or urgent situation exists that requires immediate action. General coverage of homeland security programs, even acknowledging the public's need to know, does not meet this standard. In addition, the contracts at issue are several years old, with both contracts completed. Accordingly, any article would be of primarily historical interest for which no exigency exists.

In addition, you argue that "by delaying the response to this request …, the public will have to wait too long to find out whether TSA is spending billions of its tax dollars in an appropriate manner to

---

[6] Sara Kehaulani Goo, *Airport Screeners' Hiring Under Scrutiny*, WASHINGTON POST, Sept. 12, 2003, at E01. *See also* William Bowles, *Banking on Terror – the NCS Pearson Story*, INFORMATION CLEARING HOUSE, Nov. 6, 2003 (detailed article on screener assessment process, NCSPearson, and TSA oversight).
[7] 5 U.S.C. § 552(a)(6)(E) (2000).
[8] *Id.* at (E)(i). *See also* 6 CFR § 5.5(d)(1) (2005).
[9] *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001).
[10] *Id.*

4

protect us from attack," and that "Congress is considering whether to fund these programs." Because Congressional oversight of TSA program funding is generally not a matter of exigency, and because both of the contracts at issue have no pending funding requests, you have not demonstrated that any delay in TSA's processing the records could "reasonably be foreseen to cause a significant adverse consequence to a recognized interest."[11] Accordingly, I affirm the denial of your request for expedited processing for FOIA TSA05-0611.

This is the final decision pertaining to your appeal for expedited processing. I am the person responsible for this decision. If you wish, you may seek judicial review of this final decision in the United States District Court for the district in which you reside, have principal place of business, where the records are located, or in the District of Columbia.

Sincerely,

Douglas I. Callen
Director
Office of Security

---

[11] *See* legislative history of the expedited processing provisions, at H.R. REP. NO. 104-795, at 26.

5