# **EXHIBIT 1**

U.S. Department of Homeland Security

Office of Security
601 South 12th Street
Arlington, VA 22202

JUN 27 2005



Transportation
Security
Administration

Mr. Scott Higham
The Washington Post
1150 15th Street, N.W.
Washington, DC 20071-7403

Re: FOIA Case Number:  TSA05-0440 (Fee Waiver & Expedited Treatment)
TSA05-0441 (Fee Waiver & Expedited Treatment)
TSA05-0442 (Fee Waiver & Expedited Treatment)
TSA05-0443 (Fee Waiver & Expedited Treatment)

Dear Mr. Higham:

This is in response to your correspondence relating to the referenced requests for information under the Freedom of Information Act (FOIA), 5 U.S.C. §552, in which you request that TSA waive all fees and grant expedited processing of your requests. On March 9, 2005, TSA requested that you provide a justification for the requested fee waiver, and denied expedited processing. On April 27, 2005, you submitted a consolidated justification for a fee waiver, and requested that the letter be treated as an appeal if the agency were inclined to deny the request. On April 28, 2005, you submitted an appeal with respect to the denial of expedited processing. This letter constitutes TSA's decision on appeal as to your requested fee waiver and expedited processing. For reasons more fully described below, I affirm TSA's denial of a fee waiver with respect to requests TSA05-0442 and TSA05-0443, and grant your appeal for a fee waiver as to requests TSA05-0440 and TSA05-0441. I affirm the denial of expedited processing for each request sent to you by letter dated March 9, 2005.

Fee Waiver

In separate letters dated March 1, 2005, you requested a large number of records under the FOIA related to four separate contracts[1] administered by TSA; specifically, contract files and documents typically contained in a contract file, documents relating to pre-bid and pre-award stages, documents relating to the performance of the contractors since the contracts were awarded, and all correspondence and communications regarding the contract. You also requested that TSA "waive all fees in the public interest because the information will contribute to public understanding of the operations or activities of the government and is not primarily in the commercial interest."

---

[1] TSA05-0440: Lockheed Martin contract for the Computer Assisted Passenger Prescreening System, also known as CAPPSII; TSA05-0441 for the Unisys contract for TSA technology infrastructure program; TSA05-0442 for the Boeing contract to provide an explosive detection system to screen baggage at the nation's airports; and TSA05-0443 for the NCS Pearson contract for hiring and deploying an airport passenger screener workforce.

Paraphrasing the standard for a fee waiver does not constitute a sufficient basis for granting the waiver. By letter dated April 27, 2005, you sought to provide additional justification for your fee waiver requests. By email dated May 12, 2005, TSA asked you to "fully identify the operations and activities of the government that each of your four requests is targeted at." By letter dated May 17, 2005, you disagreed that any further elaboration was necessary, although you then provided some additional information.

The FOIA provides for news media FOIA requesters to be assessed duplication fees for responsive documents. The FOIA also authorizes agencies to reduce or waive fees, in whole or in part, when it is determined that such action is in the public interest because furnishing the information is (1) likely to contribute significantly to public understanding of the operations or activities of the government, and (2) is not primarily in the commercial interest of the requester. Such fee waivers are not automatic and must be justified by the requester. The Department of Homeland Security (DHS) regulations[2] list four factors to be used when determining whether disclosure is likely to contribute significantly to public understanding of the operations or activities of the government. I shall address these factors individually.

1. The subject of the request.

The subject of the requested records must concern identifiable operations or activities of the federal government, with a connection that is direct and clear, not remote or attenuated. In your May 17, 2005 letter, you argue that all four requests satisfy this prong, in that they "seek records that document TSA's performance of government functions – procuring and overseeing multibillion-dollar homeland security contracts." I find that your request satisfies this prong of the analysis.

2. The informative value of the information to be disclosed.

The disclosable portions of the requested records must be meaningfully informative about government operations or activities. The disclosure of information already in the public domain would not be as likely to contribute to such understanding. With respect to this prong, you argue merely that it "is hard to imagine a set of records that would be more likely to contribute to the public's understanding of the identified TSA operations and activities", and that you believe the records have not previously been released and would thus add new information to the public's understanding. Your justification, relying on the purported self-evident nature of the records, is insufficient. In addition, as discussed in greater detail below, a simple search of the internet reveals that information on some of these contracts has already been the subject of much public information dissemination, including by your own newspaper. Nevertheless, TSA will evaluate this prong in conjunction with the fourth prong below.

3. Whether disclosure to this requester will contribute to public understanding.

The disclosure must contribute to the understanding of the public at-large, as opposed to the individual understanding of the requester or a narrow segment of interested persons. DHS regulations presume that a representative of the news media will normally satisfy this consideration. Accordingly, I find that your requests satisfy this prong of the analysis.

---

[2] 6 CFR 5.11(k)(2) (2005).

4. Public understanding must be significantly enhanced by disclosure.

To warrant a waiver or reduction of fees, the public's understanding of the subject matter in question, as compared to the level of public understanding existing prior to the disclosure, must be likely to be significantly enhanced by the disclosure. Disclosure of information that already is in the public domain, in either a duplicative or a substantially identical form, would not significantly contribute to such understanding because nothing new would be added to the public's understanding. *See Sierra Club Legal Def. Fund*, No. 93-35383, *slip op.* at 4 (9th Cir. Aug. 29, 1994) (disclosure would not "add anything to 'public understanding' in light of vast amount of material already disseminated and published); *Sloman v. United States Dep't of Justice*, 832 F. Supp. 63, 68 (S.D.N.Y. 1993) (information released to other writers will not contribute significantly to public understanding of operations of government). A simple search for news articles reporting on and analyzing TSA's implementation and oversight of these contracts revealed the following:

TSA05-0440: Lockheed Martin contract for the Computer Assisted Passenger Prescreening System (CAPPS II)

There were an extensive number of news articles, press releases and commentaries concerning the Lockheed Martin contract for CAPPS II. It appears, however, that the majority of these articles concerned the privacy issues surrounding the program. A small number also discuss TSA's awarding of the contract to Lockheed Martin and provide some background into the details of the contract. *See, e.g.*, Robert O'Harrow Jr., *Air Security Network Advances*, WASHINGTON POST, Mar. 1, 2003, at E01. Because these existing articles do not appear to inform the public directly on the issues you have identified, I am granting your fee waiver request for TSA05-0440.

TSA05-0441: Unisys contract for the TSA technology infrastructure program

Most news articles discuss the award and implementation, while others discuss the tools and strategies used by Unisys to manage TSA's Information Technology Managed Services. Several 2005 articles report on the issues surrounding possible extension or re-bidding of the technology infrastructure contract. While there have been some articles[3] concerning TSA's actions in implementing and overseeing the Unisys contract, it remains possible that your efforts will significantly enhance the public's understanding and I am therefore granting your fee waiver request for TSA05-0441.

---

[3] Wilson P. Dizard III, *Homeland Security Auditors to Probe IT Projects*, GOVERNMENT COMPUTER NEWS, Feb. 13, 2004 (DHS IG to review TSA oversight of IT outsourcing contract); Scott Higham and Robert O'Harrow Jr., *Contracting Rush for Security Led to Waste, Abuse*, WASHINGTON POST, May 22, 2005, at A01 (generally discussing homeland security IT contracts).

3

TSA05-0442: Boeing contract to provide an explosive detection system to screen baggage at the nation's airports

There are a tremendous number of news articles related to the Boeing EDS contract, TSA oversight, and procurement issues. Many articles discuss and analyze the September 2004 DHS Inspector General audit of TSA's implementation and oversight of the contract. *See, e.g.,* Renae Merle, *TSA Deal Overpaid Boeing, Report Says,* WASHINGTON POST, Oct. 19, 2004, at E01; Scott Higham and Robert O'Harrow, Jr., *Boeing Profits Excessive, Audit of TSA Claims,* Washington Post, May 22, 2005, at A01 (extensively discussing Boeing's response to audit). The audit, plus the ongoing nationwide news articles analyzing the audit, discuss in depth what the contract provides, the vendor's performance, and especially how the vendor was paid. Based upon these results, I have determined that disclosure of the records at issue, while potentially informative, would not significantly enhance the public understanding of how TSA implemented and oversaw this contract. I therefore affirm the denial of your request for a fee waiver for TSA05-0442.

TSA05-0443: NCS Pearson contract for hiring and deploying an airport passenger screener workforce

Similar to the Boeing contract, articles and commentary concerning TSA's contract to hire and deploy a federal screener force are voluminous. Many articles discuss the award, the cost overages, and the recently-completed Defense Contract Audit Agency audit of the contract. Specifically, the Washington Post wrote an extensive article[4] educating the public on the screener hiring process and the "pitfalls of rushed government contracting". Based upon these results, I have determined that disclosure of the records at issue would not significantly enhance the public understanding of how TSA implemented and oversaw this contract. I affirm the denial of your request for a fee waiver for TSA05-0443.

Expedited Treatment

I also write to respond to your appeal of TSA's decision to deny expedited processing of the above-referenced Freedom of Information Act (FOIA) (5 U.S.C. §552, *et seq.*) requests. You requested that TSA expedite processing because (1) you are journalists primarily engaged in disseminating information; (2) the public has an urgent need for information about homeland security programs; and (3) widespread coverage of homeland security programs, along with findings of government auditors, have raised questions about spending. By letter dated March 9, 2005, TSA denied your request for expedited processing. By letter dated April 28, 2005, you appealed our denial.

---

[4] Sara Kehaulani Goo, *Airport Screeners' Hiring Under Scrutiny,* Washington Post, Sept. 12, 2003, at E01. *See also* William Bowles, *Banking on Terror – the NCS Pearson Story,* Information Clearing House, Nov. 6, 2003 (detailed article on screener assessment process, NCSPearson, and TSA oversight).

4

The FOIA requires agencies to promulgate regulations providing for the expedited processing of requests if the requester demonstrates a "compelling need".[5] A requester primarily engaged in disseminating information bears the burden of showing "compelling need" by demonstrating that an "urgency to inform the public concerning actual or alleged Federal Government activity" exists.[6] An "urgency to inform" would be found to exist for these requests if (1) the request concerns a "matter of current exigency to the American public," and (2) the consequences of delaying the response would "compromise a significant recognized interest."[7] I note that the courts have held that these categories are to be "narrowly applied"[8] so that other requesters would not be unduly disadvantaged.

You argue that the requests are a matter of current exigency in that the records specifically concern "TSA's management of vital programs to protect airports and commercial passenger aircraft from attack," and that recent news stories and government reports "have raised questions about [adequate government monitoring] and whether taxpayer dollars are being appropriately spent." While the news articles demonstrate that the subjects of the government reports are newsworthy, you have presented no evidence that a pressing or urgent situation exists that requires immediate action. General coverage of homeland security programs, even acknowledging the public's need to know, does not meet this standard. In addition, the contracts at issue are several years old, and two of the four are no longer in place. Accordingly, any article would be of primarily historical interest for which no exigency exists.

In addition, you argue that "by delaying the response to this request ..., the public will have to wait too long to find out whether TSA is spending billions of its tax dollars in an appropriate manner to protect us from attack," and that "Congress is considering whether to fund these programs." Because Congressional oversight of TSA program funding is generally not a matter of exigency, and because at least two of the contracts at issue are outdated and have no pending funding requests, you have not demonstrated that any delay in TSA's processing the records could "reasonably be foreseen to cause a significant adverse consequence to a recognized interest."[9] Accordingly, I affirm the denial of your request for expedited processing for FOIAs TSA05-0440, -0441, -0442 & -0443.[10]

---

[5] 5 U.S.C. §552(a)(6)(E) (2000).
[6] *Id.* at (E)(i). *See also* 6 CFR §5.5(d)(1) (2005).
[7] *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001).
[8] *Id.*
[9] *See* legislative history of the expedited processing provisions, at H.R. REP. NO. 104-795, at 26.
[10] Please note that this denial in no way affects normal processing of your requests. On May 18, 2005, TSA provided you an interim response related to TSA05-0442. In addition, TSA05-0441 and TSA05-0440 are being routed for concurrence within the agency. TSA05-0443 is being processed (these contracts have not been processed in the past), which entails a business information submitter's notice being sent out to the vendor. Once TSA receives the vendor's comments, we will process these documents accordingly.

5

This is the final decision pertaining to your appeal for expedited processing. I am the person responsible for this decision. If you wish, you may seek judicial review of this final decision in the United States District Court for the district in which you reside, have principal place of business, where the records are located, or in the District of Columbia.

Sincerely,

Douglas I. Callen
Director
Office of Security